Robert HELFAND, suing derivatively in the right and on behalf and for the benefit of New America Fund, Inc., Plaintiff,

v.

NEW AMERICA FUND, INC., et al., Defendants.

Meyers L. GIRSH et al., Plaintiffs,

v.

Robert S. JEPSON, Jr., et al.,

Civ. A. Nos. 73–652, 72–2035.

United States District Court, E. D. Pennsylvania.

June 27, 1974.

As Amended Aug 5, 1974.

See also D.C., 355 F.Supp. 1104.

David Berger, Leonard Barrack, Gerald J. Rodos, Philadelphia, Pa., for plaintiff.

Daniel Mungall, Jr., Stuart H. Savett, Philadelphia, Pa., for defendants.

Harry R. Kozart, Philadelphia, Pa., for objector.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

Presently before this Court is a petition by the plaintiffs and defendants in the above captioned matters to approve a settlement agreement that, if approved, would result in these matters being dismissed from this Court.

Pursuant to our Order of November 19, 1973, a hearing was scheduled for March 20, 1974, to determine the fair-

ness, reasonableness and adequacy of the settlement agreement. This Order also included a requirement that all shareholders and would-be class members be notified by the plaintiffs. Proof of such notice was provided by the plaintiffs at the March 20, 1974 hearing.

The Court also ordered any and all objectors to notify this Court by March 1, 1974, if they intended to contest the settlement agreement. On March 1, 1974, an objection was filed by Lynn Sarah Frackman, the owner of 100 shares of New America Fund. This objection was the only one filed within the proper time period as set forth in our Order of November 19, 1973. As a result of the filing of the objector's papers, oral argument was held March 20, 1974 during which time extensive argument was presented by all parties including the objector. Subsequently, briefs were filed which added to the already extensive file of exhibits and affidavits. After a thorough and complete investigation of the documents and papers presented, the Court concludes that this settlement is fair, reasonable and adequate and will approve the settlement agreement. The Court will dismiss the objections as presented by the objector, Lynn Sarah Frackman.

The two cases involved were deemed related and assigned to this Court for disposal. The two cases were settled together, but will be discussed separately at this point in order to bring out the facts of each case.

The Meyers L. Girsh et al v. Robert S. Jepson, Jr., et al, (C.A. 72–2035) (hereinafter *Girsh* action) was commenced by six plaintiffs on October 18, 1972. The suit was brought, derivatively and on behalf of all persons who purchased shares of the New America Fund, Inc., formerly known as the Fund of Letters, Inc. The defendants in this action are New America Fund, Inc. (herein "The Fund"), a closed-end investment company, Fund Management Corporation (herein "FMC"), which functions as an investment advisor to The Fund, Portfolio Management Corporation, now known as CalCap Financial (herein "CalCap"), which is the parent of FMC, and certain present and former officers and directors of The Fund, FMC and CalCap. In addition, the action names as defendants Price Waterhouse and Company, a national accounting firm which at all relevant periods has functioned as the auditor of The Fund, and Maxwell H. Gluck, a former investor in shares of The Fund.

The *Girsh* action was brought as a class action, which was never ruled upon by the Court, on behalf of all persons who purchased shares of The Fund between September 20, 1968 and December 31, 1970. The representative claims are brought pursuant to Section 10(b) of the Securities Exchange Act of 1934, and Section 34(b) of the Investment Company Act of 1940. The Complaint seeks monetary damages, an accounting of management fees, commissions and other remuneration paid by the Fund from 1968 to the present, and an order requiring the return of any profits made by certain individual defendants as a result of personal transactions in the shares of the Fund. In addition to the representative claims, the *Girsh* action alleged certain shareholder's derivative claims as more fully described below.

The *Girsh* Complaint alleges that the defendants practiced fraud and deceit upon those persons by misstating and concealing material facts in a registration statement dated September 20, 1968, in periodic reports for the years 1969 and 1970, and in other documents. It is alleged that the class members suffered damages as a result of a decline in the price of Fund shares. The Complaint alleges that the misstatements and concealments of material facts related to the type of investment program that was, or was to be, followed by the Fund; the hazards of such an investment program, including risks associated with investment in restricted securities;

alleged agreements to purchase restricted securities made prior to the date of the propectus; conflicts of interest between the Fund, FMC and CalCap in the purchase of restricted securities; an alleged conspiracy to use the Fund as a source of revenue; the alleged overstatement of values of the Fund's portfolio securities; and the payment of allegedly excessive fees, were all injurious to the rights of the plaintiffs.

In addition to the representative claims set forth in the Complaint, the *Girsh* action also asserts derivative claims on behalf of and for the benefit of the Fund. The Complaint alleges that certain defendants violated their fiduciary duties to the Fund, and that certain named individual defendants improperly deprived the Fund of a corporate opportunity as a result of market transactions in the shares of the Fund.

Helfand v. New America Fund, et al, (hereinafter, the *Helfand* action), which has been consolidated with *Girsh* for purposes of pretrial discovery, is a derivative action on behalf of the Fund, alleging violations of Sections 36(a) and (b) of the Investment Company Act of 1940, the Investment Advisors Act of 1940, and breaches of fiduciary duty to the Fund by certain individuals in the creation of a joint venture to purchase and sell shares of the Fund. The defendants named in the *Helfand* action are substantially the same as those named in the *Girsh* action.

The plaintiffs served an extensive and detailed set of interrogatories on the defendants in accordance with Rule 34 of the Federal Rules of Civil Procedure. Pursuant to the affidavit of Gerald Rodos, Esquire, of David Berger, P.A. Attorneys-at-law, the Court learned that extensive formal and informal discovery was completed. The plaintiffs filed an extensive brief on February 12, 1973 supporting their motion for a class action determination. Numerous other motions were filed through the summer months of 1973 but the Court delayed acting as indications were received that a settlement was imminent. By Stipulation a settlement was agreed upon with the agreement subject to this Court's approval after proper and adequate notice was given to the class members and the shareholders of the fund.

The settlement provides for payment by the Fund of $400,000 in cash, less the amount approved by the Court for reasonable fees and costs of plaintiffs' counsel (not to exceed $100,000) to all purchasers of the common stock of the Fund between September 20, 1968 and December 31, 1970 who sold their shares prior to October 15, 1973. In addition, FMC and CalCap will pay the sum of $55,000 in cash to the Fund and FMC will reduce its quarterly fee to the Fund in the sum of $12,500 for 46 quarterly periods as long as FMC remains the investment advisor to the Fund. In addition, Maxwell Gluck will pay $10,000 to the Fund in settlement of claims made against him.

The objector advances a number of reasons for the Court to disapprove the settlement. All of these have been answered by the plaintiffs and the defendants in their respective briefs.

The plaintiffs have submitted a brief in which they contend that the settlement agreement is fair, reasonable and adequate under all the circumstances. The case which they rely upon in the main is City of Detroit et al. v. Grinnell Corporation et al., 495 F.2d 448 (2nd Cir. 1974). This latest of cases reviews at length the procedure a Court should use in determining the reasonableness of a proposed settlement. "The most important factor (in judging the proposed settlement) is the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement." City of Detroit et al. v. Grinnell Corp. et al., supra at p. 455; West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1085 (2nd Cir. 1971); Protective Committee v. Anderson, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968).

■ Another factor that is essential for the Court to take into consideration is that although the proposed settlement may only be a mere fraction of what some consider to be the maximum potential recovery, it does not in and of itself mean that such settlement is grossly inadequate and should be disapproved. In City of Detroit et al. v. Grinnell et al., *supra*, 495 F.2d at p. 455, the Court said:

"In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery. Any reading of Judge Friendly's opinion in Newman v. Stein, 464 F.2d 689 (2nd Cir., 1972), or of the District Court's opinion in Percodoni v. Riker-Maxson Corporation, 50 F.R.D. 473 (S.D.N.Y.1970), affd. sub. nom. Farber v. Riker-Maxson Corporation, 442 F.2d 457 (2d Cir., 1971), which seems inconsistent with this principle misreads those opinions.

It might be pointed out that the settlement agreement approved in Sunrise Toyota v. Toyota Motor Company, Ltd., 1973–1 Trade Cases § 74,398, at 93,821 (S.D.N.Y.1973), did not provide for the payment of any money to the class members." City of Detroit v. Grinnell Corp., n. 2, p. 455

■ This Court also takes into consideration the caliber of the counsel who are recommending this settlement. The opinion of experienced counsel in favoring a settlement is entitled to considerable weight. Fielding v. Allen, 99 F. Supp. 137, 144 (S.D.N.Y.1951); Josephson v. Campbell, CCH Fed.Sec.L. Rep. para. 92,347 (S.D.N.Y.1969). In the case at bar all of the attorneys have reputations for being skilled in the area of securities litigation. It is highly unlikely that the plaintiffs' attorney, one of the best plaintiffs securities attorneys in the area and possibly the nation, would settle for anything less than a fair, reasonable and adequate settlement especially where the settlement agreement was made after extensive discovery, and arduous negotiations.

■ As a result of the Opinion in *Grinnell, supra,* 495 F.2d at p. 463, the Court should take into consideration in rendering its ruling, nine areas of inquiry. These areas are listed as follows; as paraphrased from *Grinnell, supra:*

(1) The complexity, expense and likely duration of the litigation;

(2) The reaction of the class to the settlement;

(3) The stage of the proceedings and the amount of discovery completed;

(4) The risks of establishing liability;

(5) The risks of establishing damages;

(6) The risks of maintaining the class action through the trial;

(7) The ability of the defendants to withstand a greater judgment;

(8) The range of reasonableness of the settlement fund in light of the best possible recovery;

(9) The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

The first criteria concerns the complexity, expense and likely duration of the case. Any class action case involves time and the trial in this specific case would involve an appraisal of forty or fifty investments in restricted securities with intricate accounting and financial procedure involved in each appraisal. As a complete trial of a class action case in this District has not occurred for a number of years, there is an increased likelihood no matter what the result, one side would claim error with a good chance that the Court of Appeals might concur. Who then are the ones who lose? Certainly not the defendants who will be paid by their corporate clients. The plaintiffs' recovery would

be that much reduced by the expense of litigation including monumental attorneys' fees. As this case is a closed-end securities case, the Court and all parties would be navigating in uncharted waters as no closed end securities case has been before the courts.

■ The second criteria is the reaction of the class to the settlement. The only class member to object prior to the March 1, 1974 deadline was Lynn Sarah Frackman, the owner of 100 shares and one who sustained only a loss of $800.00. Where only one objection is presented among a total 2,506 proofs of claim, the objectors' argument must be overwhelming to permit the court to disapprove such a settlement. See *Grinnell supra*, at p. 457.

The third criteria that the court must consider is the stage of the proceedings and the amount of discovery completed. As mentioned before in this Opinion and as found in the affidavit of Gerald Rodos, Esquire, substantial formal and informal discovery was completed to satisfy the court that the plaintiffs have sufficient knowledge to complete a settlement agreement. The inclusion of the numerous affidavits and exhibits in the record of this case indicate that extensive relevant facts were gathered by the plaintiff. Extended negotiations were held resulting in the settlement agreement.

The fourth question the court must analyze is the risks on the plaintiffs of establishing liability. As the securities involved in this case were highly speculative, restricted type of securities, the defendant, New America Fund, explained the type of security rather clearly in their prospectus. (See the Prospectus, pages 1, 3 and 4). It can be presumed that most buyers were aware of the speculative nature of the stock involved. The openness in the prospectus makes the burden on the plaintiffs of proving liability more difficult.

The plaintiffs would attempt to prove that the advisory fees were excessive. And yet, while a number of cases have been settled, only three have gone to judgment on this question and all three resulted in judgment for the defendant. Acampora v. Birkland, 220 F.Supp. 527 (D.Colo.1963); Saxe v. Brady, 40 Del. Ch. 474, 184 A.2d 602 (1962); Meisalman v. Eberstadt, 39 Del.Ch. 563, 170 A.2d 720 (1961).

The settlement agreement in this case provides for a reduction of management advisory fees over a period of 46 consecutive quarterly periods which will result in a maximum total benefit of $575,000. The plaintiffs found after reviewing the defendant's files that the Board of Directors of Fund of Letters did, indeed, evaluate its restricted investments (N.T. pp. 17–18), but only after much study of the S.E.C. rulings on restricted securities. As the Board attempted to value the securities in accordance with S.E.C. regulations, the Court acknowledges that the plaintiff would have a difficult task in proving overvaluation on the part of the defendants.

Additionally, the court recognizes the difficulties involved in proving that there is a private cause of action permitted in those sections of the Investment Company Act under which the plaintiffs are now suing. This is confirmed by the lack of authority in the area, and Judge Lord's Opinion in this District in which he held there was no private action under Section 13 of the Securities Exchange Act of 1934. Penn Central Securities Litigation, 347 F. Supp. 1327 (E.D.Pa.1972).

The fifth problem the court must answer before approving the settlement is whether the risks in establishing damages are sufficient to outweigh the essential elements of this settlement. The objector contends that the $48 million sum represents the damage suffered by the class as a result of the defendants' wrongs. This figure is determined by subtracting the amount of money raised

in the original offering ($60 million) from the present market value ($12 million) of the offering.

■ The Court takes judicial notice that the market declined during the relevant time period in question and there was a general slow down of business activity. Most of the statements made by the objector are conclusory in nature without factual or legal support. The Court recognizes that a bear market is not in and of itself proof of violations of the Federal Securities Law.

One of the objections is that there was an overvaluation of restricted securities in the Fund. Since this resulted only in a small increase in the purchase of the shares, the class would only be able to recover the amount of that overvaluation.

The sixth problem is the risks of maintaining the class action through trial. In June 1973, the case of Orn v. Eastman Dillon, Union Securities Co., 364 F.Supp. 352 (C.D.Cal.1973) was presented to the court for disposition and class action determination. The case, which is very similar to the one at bar, was denied class action status and the complaint dismissed. The *Orn* case involved a closed-end investment company specializing in investing substantially all of its assets in restricted securities. The difficulty in determining the members of the class, and the unmanageableness of conducting the case as a class, were the reasons cited. Before allowing the case at bar to proceed as a class, this court would have to take a long and hard look at the problem in the *Orn* case.

The seventh factor is the ability of the defendants to withstand a greater judgment. Mr. Donald Reifler, the primary individual defendant, and the creator and investment policy maker of Fund of Letters is presently on welfare. (See Exhibit of California Court proceedings indicating that Mr. Reifler is on welfare). The fund manager, Fund Management Corporation is also a defendant in the case, and is without assets. (N.T. pp. 40, 26, 92). While Price Waterhouse & Company has adequate assets, its possible liability is questionable, which is evidenced from the fact that it is contributing nothing to the settlement (N.T. pp. 26, 80–82).

The final two questions the court must determine is whether the settlement is reasonable in light of the best possible recovery and in light of all the attendant risks of litigation.

In the case of Dacey v. Fletcher Capital Fund Inc., C.A. 69-1834–E.D. (C.D. action was effected against a mutual Cal.1972), a settlement of a Rule 10b–5 fund. The case is one of the few reported that can give the court a comparison of settlement. In Dacey *supra,* the settlement was $95,000 gross and only included shareholders who owned 200 shares of stock or more. Here the settlement is a $400,000 gross figure for the benefit of all shareholders. Recovery will amount to approximately 5% of the claims filed by class members.

The Court need not discuss in detail the derivative settlement on the face, as it is fair, adequate and reasonable.

■ The objector complains that the procedure used in notifying the class was inadequate and insufficient time was given them to prepare their case. The notice requirements clearly complies with due process under the circumstances of this case and as set forth by the Third Circuit Court of Appeals in Greenfield v. Villager Industries, Inc., 483 F.2d 824 (3rd Cir. 1973). The Supreme Court has stated in Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) that the requirements of notice will depend on the circumstances of each case. Here a combination of mailings to a selection of certain shareholders, and newspaper notice was used, giving all shareholders, within the dates agreed upon by the settlement stipulation, adequate notice. A complete list of all shareholders during the relevant period was impossible to compile by means of the computer and could only be gathered

by manually using the transfer agent's daily work papers. (See affidavit of Gerald L. Salzman). The Court finds that such a computation would be extremely time consuming and prohibitively expensive.

 Rule 23(c)(2) of the Federal Rules of Civil Procedure uses the phrase "best notice practicable" and individuals "identified through reasonable effort." The Rule itself indicates that the type of notice is to be determined by each individual case. See State of West Virginia v. Chas. Pfizer & Co. Inc., 440 F.2d 1079, 1090 (2nd Cir. 1971); Herbst v. Able, 49 F.R.D. 286 (S.D.N.Y.1970); Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969).

In *Mullane, supra, the* Supreme Court stated at 659 of 70 S.Ct.,

" . . . impracticable and extended searches are not required in the name of due process . . . [, including those that] would impose a severe burden on the plan, and would likely dissipate its advantages."

A manual search in this case would have been expensive and burdensome and would have resulted in reduced payments to the class. The Court finds that the notice was adequate within the framework of the law of this circuit.

The Court ordered all objections to be filed in the court by March 1, 1974. On March 20, 1974, a hearing was held by the court at which time argument for and against the settlement was presented. The court also received affidavits from appropriate individuals who have or had knowledge of facts bearing on the issues in this matter. As documents and affidavits were presented by the objector at the hearing, the court cannot consider her objections to the time limitations imposed by the Court. The Court finds that the time limitations were more than reasonable, and the fact that the objector chose to file her objections so late was a decision with which she must live, not the Court.

In making its decision as to approval of the settlement, the Court realizes that formal rules of evidence do not govern in a settlement hearing. Therefore, the Court, in determining the fairness, adequacy and reasonableness of the settlement, can use whatever it believes will aid in making a decision. See Glicken v. Bradford, 35 F.R.D. 144 (S. D.N.Y.1964). Having examined carefully all the evidence and testimony presented and having researched the matter exhaustively, the Court finds this settlement fair, adequate and reasonable.

## ORDER

And now this 25th day of June 1974, it is hereby Ordered that the settlement agreement submitted in the above captioned matters is approved as fair, reasonable and adequate under all the circumstances.

And it is further ordered that the objections of Lynn Sarah Frackman are dismissed.